STATE, BERNARD BAYER ET AL., PROSECUTORS, v. MAYOR, &c. OF HOBOKEN.

1. A newspaper which has been published for two years in the city of Hoboken is entitled to a place in that class of papers from which the selection must be made for the publication of the proceedings of common council, although it is not authorized to publish the laws of this state.

2. The office of the "Hoboken Advertiser" is in Hoboken, where those who own and conduct it reside. The entire matter for the paper is composed, set up and placed in forms in Hoboken, after which the forms are sent over to New York city, where the mere press-work is done, and the papers are then brought back to the office in Hoboken, from whence they are issued to subscribers. *Held*, that this paper is, within the reason and spirit of the law, "printed and published" in Hoboken.

On *certiorari* to review certain proceedings of the common council of Hoboken.

Argued at November Term, 1881, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiffs, *W. T. Hoffman* and *E. T. Paxton.*

For the defendants, *M. W. Niven* and *J. C. Besson.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The writs of *certiorari* in this case bring up resolutions of the common council of Hoboken awarding the official printing to the "Hoboken Advertiser," and rescind-

ing a prior resolution designating the "Hudson County Democrat" as the official paper.

The validity of the resolutions is controverted upon two grounds—*First*. Because the "Hoboken Advertiser" is not authorized to publish the laws of this state. *Second*. Because it is not printed in this state.

The law governing this case, passed in the year 1877, (*Pamph. L., p.* 68,) provides: "That whenever the board of aldermen, council or common council of any city is required by the provisions of its charter to designate one or more newspapers to publish the proceedings of such board of aldermen, common council or council, and to publish the proceedings of any of the other boards in said city, in a newspaper or newspapers printed and published in said city, and authorized to publish the laws of the state, at the date of the passage of such city charter or any supplement thereto, that in every such case such city may hereafter publish the said proceedings in a newspaper or newspapers published and printed in said city, that shall have been in existence and published in said city for over two years."

In *Bayer* v. *Hoboken*, 11 *Vroom* 152, Justice Reed held that the effect of this legislation was to place a newspaper which shall have been published for two years in the city of Hoboken, in that class of newspapers from which the selection must be made for the publication of the proceedings of common council.

It is not necessary, to entitle a paper to such classification, that it be authorized to publish the laws of this state.

With respect to the second point, the facts are shown to be these :

The office of the "Advertiser" is in Hoboken; the entire matter for the paper is composed, set up and placed in forms in Hoboken, and the forms are then sent over to New York city and the press-work done there, and the papers brought back to the office in Hoboken, from whence they are issued to subscribers.

The prosecutor insists that this paper is without the requisite

qualifications; that it is not "printed and published" in Hoboken, because the mere press-work is done in New York city.

This, I think, is too narrow an interpretation of the act.

Its object was to limit the publication of the proceedings of council to such papers as were in fact local papers, conducted, made up and issued in the city of Hoboken.

The composition of the matter, the setting of the type and preparing the forms for the press-work constitute the substantial and important part of the printing. This work, in this case, being done exclusively in the office of the paper in Hoboken, with material and appliances owned and kept there, it is no misapplication of the statutory language to say that the printing office of the "Advertiser" is in Hoboken, and that the paper is printed and published there.

The strict interpretation of the words "printed and published," upon which the prosecutor's case rests, would certainly exclude from the class in which judicial sales may be published, all papers with what is termed "a patent outside," entirely made up in New York city.

The paper selected by the resolution sought to be set aside, is, within the reason and spirit of the law, "printed and published" in this state.

The action of the common council is on the side of economy in expenditure; a clear case should be presented to lead the court to reverse it.

The point made by the prosecutors, that the resolution awarding the official printing to Moyer & Luehs, of the "Hoboken Advertiser," does not designate a newspaper for that purpose as required by the charter, is not well taken.

The clear meaning of the resolution is that the publications for the city are to be made in the "Advertiser," by Moyer & Luehs, of Hoboken, who own and conduct it. It was so understood by the parties, and a written contract to that effect entered into after the passage of the resolution.

The *certiorari* should be dismissed.